UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| MICHAEL CARNACCHI, | Case No. C 11-06339 LB |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION ND, et al., | [ECF No. 10] |
| Defendants. | |

## I. INTRODUCTION

On December 15, 2011, *pro se* plaintiff Michael Carnacchi filed this putative class action against U.S. Bancorp ("Bancorp"), its North Dakota-based subsidiary U.S. Bank National Association ND ("U.S. Bank ND"), and thirteen unnamed defendants. Carnacchi claims Defendants (collectively, "U.S. Bank") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.,* by charging and collecting usurious interest rates on credit cards issued to him and other California residents. Compl., ECF No. 1 at 2-3.[1] U.S. Bank moves to dismiss Carnacchi's complaint, arguing the following: (A) the *Rooker-Feldman* doctrine deprives this court of jurisdiction over Carnacchi's claim; (B) *res judicata* bars Carnacchi's claims; and (C) Carnacchi fails to state a claim under RICO. Mot., ECF No. 10 at 9-10. In addition, U.S. Bank urges the court

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page numbers at the top of the document, not the page numbers at the bottom.

ORDER (C 11-06339 LB)

1  to strike Carnacchi's class allegations and the allegations challenging legality of U.S. Bank's
2  formation and status as a national bank. *Id.* at 23-26. Carnacchi responds that *Rooker-Feldman* and
3  *res judicata* do not apply because his claim – the formation of U.S. Bank violated the North Dakota
4  constitution – was not decided in previous litigation, and his RICO claim is pleaded adequately.
5  Following a hearing on May 24, 2012, and for the reasons stated below, the court grants U.S. Bank's
6  motion to dismiss but grants Carnacchi leave to amend to assert a claim based on the assessment of
7  interest to the judgment against him.

## II.  FACTS

9  U.S. Bank argues that Carnacchi's claims were litigated already in state court. Accordingly, the
10 court examines the state court action and the claims in the federal complaint.[2]

11 **A. <u>The State Proceedings</u>**

12 In October 2005, Carnacchi opened a credit card account with U.S. Bank ND. Compl., ECF No.
13 1 at 3, ¶ 12. U.S. Bank ND charged Carnacchi more than 14% interest on his credit card balances.
14 *Id.* Unable to pay his debts, Carnacchi defaulted on the U.S. Bank ND credit card in July 2007. *Id.*
15 at 4 ¶ 13. On July 30, 2009, U.S. Bank ND filed a collection action against him in Sonoma County
16 Superior Court. *Id.* Carnacchi, proceeding *pro se*, filed an answer and an amended answer
17 admitting substantially all of the factual allegations in U.S. Bank's complaint, including the
18 allegations that he agreed to be bound by the terms of the Cardmember agreement and he failed to
19 make the monthly payments due under the terms of that agreement. *See* Decl. of Robert M. Fineman
20 Supp. Defs.' Mot. to Dismiss, ("Fineman Decl."), Exs. A-C, ECF No. 12-1 at 5, 9; ECF No. 12-2.
21 Carnacchi also raised affirmative defenses, including the defenses that U.S. Bank's damages claims
22 violated the Eighth Amendment's prohibition on excessive fines and its collection action violated

---

[2]  U.S. Bank asks the court to take judicial notice of certain documents submitted in the state court proceedings, copies of North Dakota statutes, and a document taken from the Office of the Comptroller of the Currency's website. *See* ECF No. 11; Fineman Declaration Exs. A-T, ECF No. 12. Carnacchi did not oppose the request. On a motion to dismiss, a court may take judicial notice of matters of public record in accordance with Federal Rule of Evidence 201 without converting the motion to dismiss to a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F. 3d 668, 688-689 (9th Cir. 2001). Because Exhibits A to T are public records, the court may take notice of the undisputed facts within them. *Id.*

ORDER (C 11-06339 LB)
2

1  RICO. ECF No. 12-2 at 3.

2  Carnacchi also filed a cross-complaint alleging that U.S. Bank ND assessed illegally high interest rates on his credit card balances. *See* ECF No. 12-2 at 11-13, ¶¶ 24-34. Carnacchi argued that the rates were usurious under 12 U.S.C. § 85, which caps credit card interest rates at 7% where "no rate is fixed by the laws of the State." *See, e.g.,* ECF No. 12-6 at 14-15. According to Carnacchi, North Dakota law does not "fix" the interest rates banks may charge but permits banks to charge any amount agreed to by the parties. *Id.* at 13-14. Carnacchi's cross-complaint also alleged that U.S. Bank ND's attempt to collect the purportedly unlawful debt constituted a RICO violation. ECF No. 12-2 at 3.

The following is a time line of the filings, orders and relevant content in the state case.

| Date Filed | Document | Relevant Content |
|---|---|---|
| 12/10/10 | U.S. Bank's demurrer to Carnacci's Cross-Complaint (Fineman Decl. Ex. E, ECF No. 13) | Interest rates charged do not violate usury laws and are not predicate acts under RICO. *Id.* at 11. |
| 1/1/11 | Carnacchi's Opposition to Demurrer (*Id.* Ex. F) | Addressing usury issue. |
| 1/25/11 | U.S. Bank's Reply (*Id.* Ex. G) | Addressing usury issue. |
| 2/23/11 | Carnacchi's Further Opposition | Addressing usury issue. |
| 3/2/11 | U.S. Bank's Motion for Judgment on the Pleadings (*Id.* Ex. L) | Carnacchi admits contract, does not deny breach, and admits U.S. Bank wrote off charges. *Id.* |
| 3/3/11 | U.S. Bank's Supplemental Briefing (at court's request) on usury issue. *Id.* Ex. I. | Addressing usury issue. |
| 3/8/11 | Carnacchi's Reply to U.S. Bank Supplemental Briefing [on Usury Issue] and Summary of Opposition to Demurrer. *Id.* Ex. J. | Addressing usury issue. |

ORDER (C 11-06339 LB)

3

| | | |
|---|---|---|
| 3/29/11 | Carnacchi's Opposition to U.S. Bank's Motion for Judgment on the Pleadings. *Id.* Ex. M, ECF No. 13-1. | States that since his last filing, he discovered new facts about how U.S. Bank was formed. Then raises – for the first time – the state constitutional argument that U.S. Bank was formed through special legislation in North Dakota that violates the state constitution and that U.S. Bank thus lacks standing, its contract with him is invalid, and the court should allow him to amend his cross-complaint to include the new allegations and should reconsider its ruling on U.S. Bank's general demurrer. *Id.* at 11. |
| 4/5/11 | U.S. Bank's Reply to Carnacchi's Opposition to U.S. Bank's Motion for Judgment on the Pleadings. *Id.* Ex. N, ECF No. 13-2. | States that Carnacchi improperly raises a new affirmative defense in a case pending since July 30, 2009. Then addresses the North Dakota state constitutional argument by arguing that Carnacchi lacks standing, Carnacchi is estopped from challenging the unconstitutionality because he benefitted from the extension of credit, and U.S. Bank is lawfully chartered. Concludes that further amendment should be denied because amendment will not cure these deficiencies. *Id.* |

| Date | Document | Ruling |
|---|---|---|
| 4/12/11 | Minute order re Motion for Judgment on the pleadings.  Courtroom Minutes in S18, *U.S. Bank Nat'l Ass'n ND v. Carnacchi*, No. SCV-248229 (Sonoma Cty Super. Ct. Apr. 12, 2011).[3] | Following oral argument, adopted "previously-published tentative ruling" and granted U.S. Bank's motion for judgment on the pleadings and denied Carnacchi's late request to add his new North Dakota state constitutional affirmative defense or amend his cross-complaint, specifically stating "no amendment will be allowed" and "there is no basis to amend" the cross-complaint. |
| 4/13/11 | Order Sustaining Demurrer to Carnacchi's Amended Cross-Complaint.  Fineman Decl. Ex. K, ECF No. 12-6. | Sustains demurrer without leave to amend. |
| 5/3/11 | Judgment against Carnacchi.  *Id.* Ex. O, ECF No. 13-2. | Judgment in the amount of $16,722.09, accrued interest of $4,391.23 (calculated from 7/31/08 to 4/12/11 at 10% per annum), and costs of the suit. |
| 11/28/11 | Order granting US Bank its attorney's fees.  *Id.* Ex. P. | Carnacchi to pay U.S. Bank's attorney's fees of $27,879.75. |

To further illustrate the state court's holdings, the following are quotations from the two orders.

On April 12, 2011, the court made the following rulings:

> On March 2, 2011, plaintiff US Bank filed a motion for judgment on the pleadings . . . [that] is opposed by defendant Michael Carnacchi. . . .
>
> The plaintiff has pled facts that are sufficient to state a cause of action against Carnacchi for breach of a written credit card contract, as well as common counts.  To the contrary, the defendant has not pled any defenses to the elements of those causes of action.  And the affirmative defenses that were pled fail as a matter of law.
>
> The plaintiff's motion for a judgment on the pleadings should now be granted without leave to amend, irrespective of Carnacchi's late request to amend his answer to add yet another exotic, affirmative defense: that U.S. Bank is not a lawful federally-chartered banking institution.
>
> This proposed amendment would be quite dilatory, and it would clearly cause prejudice to the bank.  The allegation appears to have no merit, Carnacchi's standing to raise the issue is dubious, and he is probably estopped from doing so anyway.

---

[3] Neither party filed this document with the court.  Instead, the court located the Courtroom Minutes on its own and takes judicial notice of them pursuant to Federal Rule of Evidence 201.  At oral argument, the court advised the parties that it intended to take judicial notice of this document, and neither party objected.

UNITED STATES DISTRICT COURT
For the Northern District of California

> The motion for a judgment on the pleadings will be granted, and no amendment will be allowed.

Courtroom Minutes in S18, *U.S. Bank Nat'l Ass'n ND v. Carnacchi*, No. SCV-248229 (Sonoma Cty Super. Ct. Apr. 12, 2011).

On April 13, 2011, the state court sustained U.S. Bank's general demurrer and denied Carnacchi's motion to amend, holding the following:

> Back on September 3, 2010, the cross-complaint Michael Carnacchi (Carnacchi) filed a first amended cross-complaint. Then . . . US Bank . . . filed general demurrers to all seven causes of action. . . .
>
> Carnacchi opposes the demurrers. . . . The court will sustain the general demurrers, *without leave to amend*, as to all seven causes of action: usury, a request for declaratory relief, a violation of the RICO Act, a violation of the Eighth Amendment to the U.S. Constitution, a violation of the Fourteenth Amendment to the U.S. Constitution, fraud, and unfair competition.
>
> Upon further briefing, it is patent that the cross-complaint cannot state causes of action, which are dependent upon a form of state action, and he is unable to successfully plead any cognizable allegation of usury. Interest rates charged by the private bank in this case were lawful based upon the contractual agreement of the parties. *Hawkins v. Citicorp Credit Services, Inc.*, (D.Md. 2009) 665 F.Supp.2nd 518, 523; *Hiatt v. San Francisco National Bank* (9th Cir. 1966) 361 F.2nd 504, 506-507.
>
> The cross-complaint stands or falls upon the concept of usury. For the reasons just stated, this pleading cannot stand, and **there is no basis to further amend it in order to give it legs.**
>
> Because "the facts are not in dispute and the claims are clear but no liability exists under substantive law," the general demurrers will be sustained without leave to amend. *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1465; *Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436.

Fineman Decl. Ex. K, ECF No. 12-6 at 23 (italicized emphasis in original; bolded emphasis added).

**B. Federal Complaint**

On December 15, 2011, Carnacchi filed this federal action, naming U.S. Bank ND and Bancorp as defendants. ECF No. 1. In his complaint, Carnacchi argues that because U.S. Bank ND is not lawfully located in North Dakota, "it cannot rely on North Dakota's interest rate and usury laws to charge California borrowers in excess of the 7% limit fixed by Title 12 U.S.C. § 85." *Id.* at 3, ¶ 11. He contends that this renders his debt and that of all other U.S. Bank ND credit card borrowers legally unenforceable "unlawful debts" under RICO. *Id.* at 5, ¶¶ 16-18. He further claims that U.S. Bank ND's collection action constituted collection of an unlawful debt in violation of RICO and that

Bancorp collected income and reinvested it into U.S. Bank ND to "perpetuate more unlawful debt." *Id.* at 5, ¶¶ 16-20.

The complaint sets forth additional allegations to support the conclusion that U.S. Bank is not lawfully located in North Dakota. In 2001, the Federal Reserve Board of Governors conditionally approved the merger of Firstar Corporation ("Firstar") and the former U.S. Bancorp. ECF No. 1 at 2, ¶ 8. Under the terms of the merger agreement, Firstar acquired the former U.S. Bancorp and all of its subsidiaries, including U.S. Bank ND. *Id.* The newly formed company adopted the U.S. Bancorp name. *Id.* The post-merger U.S. Bancorp (hereafter, "Bancorp") is a defendant in this federal lawsuit.

The Federal Reserve conditioned its merger approval upon a commitment that Bancorp would divest itself of U.S. Bank ND within two years of the merger. The FRB required divestment because its authority to approve the merger was limited by the Bank Holding Company Act of 1956 ("BHCA"), 12 U.S.C. § 1841, *et seq. Id.* at 9. The BHCA bars the FRB from approving proposed mergers "that would have the effect of permitting an out-of-State bank holding company to acquire a bank in a host State that has not been in existence for the minimum period of time, if any, specified in the statutory laws of any State." 12 U.S.C. § 1849(d)(1)(B) (referenced in ECF No. 1 at 9). As applied to the Firstar / former U.S. Bancorp merger, North Dakota law imposed a minimum age requirement of five years. Because U.S. Bank ND was established on July 31, 1997, the minimum age requirement applied. *See* ECF No. 1 at 9. Nonetheless, there was an exception to the minimum age requirement that would allow the merger to proceed so long as Bancorp divested itself of any banks subject to the minimum age requirement within two years of the merger. ECF No. 1 at 9. Accordingly, the FRB approved the merger subject to U.S. Bancorp committing to divest itself of U.S. Bank ND within two years of February 21, 2001. *Id.* at 2-3, ¶ 8.

After the merger, in an effort to retain U.S. Bank ND, U.S. Bancorp lobbied for a change to North Dakota law that would exempt U.S. Bank ND from the minimum age requirement. *Id.* at 10. On May 9, 2001, the North Dakota legislature amended the North Dakota Century Code so as to exempt from the minimum age requirement "any bank established in this state on July 31, 1997." *Id.* at 3, ¶¶ 9-10. Carnacchi alleges that this violates the North Dakota state constitution. *Id.* at 3-4,

ORDER (C 11-06339 LB)      7

¶¶ 10,15 (discussing how the North Dakota Supreme Court consistently has held that this kind of special legislation is unconstitutional under the state constitution). After the law was changed, U.S. Bancorp applied to the FRB for relief from the order requiring them to divest U.S. Bank ND. *Id.* at 3, ¶ 10. The FRB subsequently granted U.S. Bancorp's request. *Id.*

Thus, Carnacchi concludes, U.S. Bank is not lawfully located in North Dakota and cannot avail itself of North Dakota's higher interest rates, it cannot charge interest in excess of 7%, it cannot collect the debt of any U.S. Bank ND credit card borrowers, and its doing so violates 12 U.S.C. § 85 and RICO. *Id.* at 5, ¶¶ 16-20. Carnacchi seeks the following relief:

- Treble repayment of all interest paid at 14 percent or more, pursuant to 18 U.S.C. § 1964(c), ECF No. 1, ¶ 23.
- Double repayment of interest paid at seven percent or more, *id.*
- Restitution.
- A declaration that the special legislation amending North Dakota Century Code Section 6-08.3-13 is unconstitutional, *id.* ¶ 25.
- An order requiring U.S. Bank to divest U.S. Bank ND, pursuant to 12 U.S.C. § 1842 (d)(1)(B), *id.* ¶ 26.
- An order nullifying U.S. Bank ND's "rights, privileges, and franchises," *id.* ¶ 27.
- An order prohibiting U.S. Bank from making unlawful loans in California, *id.* ¶ 28.
- An order "throwing out" the state court judgment based upon U.S. Bank ND's purported misrepresentations, *id.* ¶ 29.
- Punitive damages of three times the judgment, costs, and fees awarded state court, *Id.* ¶ 30.
- Unspecified punitive damages, *id.* ¶ 31.
- Fees and costs to Plaintiff, *id.* ¶ 32.

### III. LEGAL STANDARDS

**A. <u>Dismissal Under Rule 12(b)(1)</u>**

Dismissal of a claim is appropriate under Federal Rule of Civil Procedure 12(b)(1) when the court lacks subject-matter jurisdiction over the claim. Federal subject-matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).

A Rule 12(b)(1) motion may either attack the sufficiency of the complaint to establish federal

jurisdiction (a facial challenge) or allege a lack of jurisdiction that exists despite the formal sufficiency of the complaint (a factual challenge). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Thornhill Publishing Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). A facial attack asserts lack of federal jurisdiction based on the complaint alone, and the court must "accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). By contrast, with a factual challenge, a court need not assume the truth of factual allegations but may hear additional evidence about jurisdiction and resolve factual disputes when necessary. *See Roberts*, 812 F.2d at 1177 (quotation omitted). If a defendant challenges jurisdiction by presenting evidence, then the party opposing the motion must present sufficient evidence to support the court's subject-matter jurisdiction. *See Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

Dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B. Failure to State a Claim**

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal

citations and parenthetical omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). This is particularly true where a plaintiff represents himself *pro se*. "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.1990)).

## IV.  DISCUSSION

### A.  Rooker-Feldman Doctrine

U.S. Bank argues that the *Rooker-Feldman* doctrine deprives this court of jurisdiction over Carnacchi's claims.

Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction over a claim amounting to a "de facto appeal" of a state court judgment that "asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Noel v. Hall*, 341 F.2d 1148, 1163-64 (9th Cir. 2003); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *see also Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986) (a "United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings").

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292-93 (2005), the Court set forth four requirements for the application of the *Rooker-Feldman* doctrine. First, the federal plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by the state court judgment. Third, the plaintiff must be asking the district court to review and reject that judgment. Fourth, the state court judgment must have been rendered before the District Court

1  proceedings commenced.

2  Furthermore, when the federal suit is, at least in part, barred by *Rooker-Feldman*, a federal court
3  "must also refuse to decide any issue that is 'inextricably intertwined' with an issue resolved by the
4  state court in its judicial decision." *Noel*, 341 F.3d at 1158. A federal claim is inextricably
5  intertwined with a state court decision if its success depends upon a determination that the state
6  court wrongly decided the issue before it. *Reusser v. Wachovia Bank, N.A.,* 525 F.3d 855, 859 (9th
7  Cir. 208). By contrast, "if a federal plaintiff presents some independent claim, albeit one that denies
8  a legal conclusion that a state court has reached in the case to which he was a party . . . then there is
9  jurisdiction, and state law determines whether the defendant prevails under principles of preclusion."
10 *Exxon Mobil*, 544 U.S. at 293 (internal quotes omitted). Similarly, *Rooker-Feldman* does not bar
11 federal jurisdiction over federal claims where a state court declined to address the same claims in
12 state proceedings. *See Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004); *see also Robinson v.
13 Ayoshi*, 753 F.2d 1468, 1470-71(9th Cir. 1985), *vacated and remanded on other grounds*, 477 U.S.
14 902 (1986).

15 *Rooker-Feldman* applies only where the Plaintiff seeks relief for injuries caused by the state
16 court judgment. *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) ("The clearest
17 case for dismissal based on the *Rooker-Feldman* doctrine occurs when a federal plaintiff asserts as a
18 legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court
19 judgment based on that decision."). Nonetheless, if "a federal plaintiff asserts as a legal wrong an
20 allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."
21 *Noel*, 341 F.3d at 1164. "*Rooker-Feldman* thus applies only when the federal plaintiff both asserts
22 as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state
23 court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004).

24 U.S. Bank contends that Carnacchi's claims in this lawsuit are a forbidden de facto appeal of the
25 state court's judgment. ECF No. 10 at 14-15 (*citing* ECF No. 1 at 7, ¶ 29). Carnacchi responds that
26 "legal issues that have not been litigated are not precluded, even where the legal remedy sought. . . is
27 the same as that sought in the earlier proceedings." Opp'n., ECF No. 21 at 5. He also asserts that
28 *Rooker-Feldman* does not apply because the state court sustained a general demurrer against his

1  RICO claim (which ordinarily permits refiling of a claim based on new facts) and did not rule on the
2  merits. *Id.* at 4.

3  *Rooker-Feldman* bars a new lawsuit that challenges errors by the state court. It would not bar,
4  by contrast, claims that are not the equivalent of an appeal of the state court judgment. An
5  illustration of claims that are not barred is shown by the "extrinsic fraud rule." "It has long been the
6  law that a plaintiff in federal court can seek to set aside a state court judgment obtained through
7  extrinsic fraud." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004); *Barrow v. Hunton*,
8  99 U.S. (9 Otto) 80 (1878). In part, that is because the court does not err when it reaches a result
9  and does not know about relevant information concealed from it.[4] In such a circumstance, the new
10  lawsuit is not challenging the state court judgment but instead challenges the deceiver's fraudulent
11  withholding of information.

12  Here, there is no extrinsic fraud in the state court that resulted in the state court's making a
13  decision without knowing all of the facts. This can be seen by comparing the federal and state
14  lawsuits. Carnacchi's federal lawsuit RICO claim – like his state lawsuit RICO claim – challenges
15  his credit card's interest rate as usurious under 12 U.S.C. § 85, which caps the credit card interest

---

[4] U.S. Bank nonetheless argues that "[e]ven a claim that the state court judgment was obtained through 'extrinsic fraud' is barred." ECF No. 10. at 14 (quoting *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859-60 (9th Cir. 2008)). *Reusser* does not support that conclusion. The case involved Wachovia's obtaining a default judgment. A "parade of errors" preceded that judgment that resulted in the Reussers' wrongly believing that they had filed a petition challenging the complaint (even though the clerk rejected it and returned it to the wrong address). *Id.* at 557. The Reussers thus never knew that the petition had not been filed, and Wachovia never told the court that it had been served with the petition. *Id.* The Reussers filed a motion to vacate the default judgment, arguing in part that Wachovia's failure to tell the court that it had been served was an "extrinsic fraud" on the court. The state court denied the motion without specifying the reasons for it. But it knew about the issue, and it denied the motion anyway. That is not "extrinsic fraud" that allows a new lawsuit. The "extrinsic fraud" exception requires that the state court does not know about the concealed facts. *See id.* at 859 (contrasting facts in *Reusser* with those in *Kougasian v. TMSL, Inc.*, "in which [the Ninth Circuit] held that *Rooker-Feldman* does not bar a federal plaintiff from asserting as a legal wrong that an adverse party engaged in 'conduct which prevented a federal plaintiff from presenting his claim in court.'") (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004)); s*ee also Engelen v. Erin Capital Management*, No. 10-CV-01124 BEN (RBB), 2011 WL 3844587, at *3 (S.D. Cal. Aug. 30, 2011).

ORDER (C 11-06339 LB)

1  rate at 7% if the state does not set an interest rate.  He does not repeat his state court argument that
2  North Dakota law fails to "fix" the interest rates.  Instead, he argues that North Dakota law does not
3  apply to U.S. Bank because it was not lawfully constituted under North Dakota law.  *See supra* p.7
4  (discussing argument that the May 9, 2001 North Dakota special legislation exempting U.S. Bank
5  from the state's two-year minimum age requirement was unconstitutional under the state
6  constitution).  That same argument was raised in state court in Carnacchi's Opposition to U.S.
7  Bank's Motion for Judgment on the Pleadings.  Fineman Decl. Ex. M, ECF No. 13-1.  And the court
8  – with the arguments fully briefed as set forth in the chart above on page 3 through 5 – rejected
9  Carnacchi's argument, sustained U.S. Bank's demurrer, and explicitly denied Carnacchi leave to
10 amend.  Thus, to the extent that Carnacchi argues that the *Rooker-Feldman* doctrine does not apply
11 because it was extrinsic fraud for U.S. Bank to conceal the details of the special legislation from the
12 state court, that argument fails. The state court knew about it and – as in *Reusser* – reached its
13 conclusions anyway.  *See* 525 F.3d at 859-60.

14 Carnacchi argues that the state court may not have addressed his argument on the merits.  Instead
15 of rejecting it outright, the court noted that it was late, dilatory, and prejudicial.  *See supra*
16 Courtroom Minutes p.5.  Then, it said that "the allegation appears to have no merit, Carnacchi's
17 standing . . . is dubious, and he is probably estopped."  *Id.*; *see* U.S. Bank's Reply to Carnacchi's
18 Opposition, Fineman Decl. Ex. N, ECF No. 13-2 (arguing that Carnacchi's claim that U.S. Bank was
19 unlawfully exempted from North Dakota's two-year minimum age requirement fails on the merits,
20 and Carnacchi lacks standing and is estopped).  Carnacchi concludes that he is raising an
21 independent claim because the state court did not really address his claim.

22 That argument has some resonance given the state court's less-than-definite rejection of
23 Carnacchi's argument on the ground that it "appears to have no merit" and his standing is "dubious."
24 Then again, the court explicitly denied Carnacchi leave to amend, which supports the conclusion
25 that the state court rejected Carnacchi's claim outright.  That would make Carnacchi's federal claim
26 here a direct challenge to the state judgment, and that would be barred by the *Rooker-Feldman*
27 doctrine.
28 The problem is that the record is insufficient.  The parties did not submit anything (like the state

1 court ruling that this court found on its own or a transcript of the hearing) that might illuminate
2 precisely the decisions that the state court reached. And U.S. Bank's *Rooker-Feldman* argument
3 was fairly high level and was not a nuanced analysis of the Ninth Circuit cases, which establish that
4 it matters what the state court actually considered and decided. In the end, for the *Rooker-Feldman*
5 doctrine to apply, the federal court has to be able to conclude that the federal lawsuit is a de facto
6 appeal of the state court judgment. *See, e.g., Noel v. Hall*, 341 F.2d at 1163-64.

In any event, the court concludes in the next section that res judicata bars the federal lawsuit.

**B. <u>Res Judicata/Claim Preclusion</u>**

U.S. Bank next argues that claim preclusion bars Carnacchi's complaint because he litigated and lost a substantively identical RICO claim against U.S. Bank ND in state court.

A federal court must give a state court judgment the same preclusive effect that would be given to that judgment under the law of the state in which judgment was rendered. 28 U.S.C. § 1738 (the Full Faith and Credit Statute); *San Diego Police Officers' Ass'n v. San Diego City Employee's Retirement System*, 568 F.3d 725, 734 (9th Cir. 2009); *see Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81(1984). Under California law, for claim preclusion to bar a subsequent action, "three requirements have to be met: (1) the second lawsuit must involve the same 'cause of action' as the first one, (2) there must have been a final judgment on the merits in the first lawsuit, and (3) the party to be precluded must itself have been a party, or in privity with a party, to that first lawsuit." *San Diego Police Officers' Ass'n*, 568 F.3d at 734 (summarizing California law); *see also Le Parc Cmty. Ass'n v. Workers' Comp. Appeals Bd.*, 110 Cal. App. 4th 1161, 1169 (2003).

The parties do not dispute that they both were parties to the state lawsuit. Thus, the court addresses the first two factors and concludes that claim preclusion bars this federal lawsuit.

**1. Same Cause of Action**

To determine whether prior proceedings involve the same claim or cause of action as the current one, "California has consistently applied the 'primary rights' theory, under which the invasion of one primary right gives rise to a single cause of action." *Kay v. City of Rancho Palos Verdes,* 504 F.3d 803, 809 (9th Cir.2007). The Ninth Circuit has explained that under this theory,

> a cause of action is comprised of a primary right of the plaintiff, a corresponding primary duty of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a primary right gives rise to but a single cause of action. . . . As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered.

*Maldonado v. Harris,* 370 F.3d 945, 952 (9th Cir.2004) (quoting *Mycogen Corp. v. Monsanto Co.,* 28 Cal. 4th 888, 904 (2002)). In other words, "if two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *San Diego Police Officers' Ass'n,* 568 F.3d at 734 (quoting *Eichman v. Fotomat Corp.,* 147 Cal. App. 3d 1170 (1983)); *see also Gamble v. General Foods, Corp.,* 229 Cal. App. 3d 893, 898 (1991) ("[T]wo actions constitute a single cause of action if they both affect the same primary right.").

U.S. Bank first argues that Carnacchi's state and federal RICO claims allege the same causes of action. ECF No. 10 at 16 ("Plaintiff's current RICO claim is the same claim that was asserted in his state court Cross-Complaint"). Carnacchi counters that his federal RICO claim states a different cause of action because it is premised on his North Dakota constitutional argument, which the state court did not address directly. *See supra* Part II.A.

As the table on pages 3 through 5 demonstrates, and as discussed in the previous section, Carnacchi raised the argument (albeit belatedly in his opposition to the motion for judgment on the pleadings), U.S. Bank opposed the argument on procedural grounds and on the merits, and the state court rejected the argument on procedural grounds and (perhaps tentative) substantive grounds.

Carnacchi makes a federal claim based on the same allegations. He alleges that U.S. Bank is subject to 12 U.S.C. § 85, which caps credit card interest rates at 7%. ECF No. 1 at 5, ¶ 16. As a result, U.S. Bank's collection action against him violated RICO's prohibition on collection of unlawful debts. *Id.* at ¶ 17-19. The alleged collection of an unlawful debt is the same injury and the same wrong that Carnacchi alleged in his state court action. *See* ECF No. 12-2 at 10-11, ¶¶ 20-23, 13, ¶¶ 31-34. The only difference is that in his federal lawsuit, Carnacchi does not reiterate one of

his theories about why U.S. Bank is subject to the interest rate limitation in 12 U.S.C. § 85.[5] The court concludes that Carnacchi's state and federal claims involve the same cause of action under California law.

This analysis is supported in case law. For example in *Branson v. Sun–Diamond Growers of California*, an employee first unsuccessfully sued his employer for business-related torts and sought *statutory* indemnity from his co-defendant and employer under Corporations Code § 317. 24 Cal. App. 4th 327, 334–35 (1994). Later, the employee filed another action against his employer for *equitable* and *contractual* indemnity. *Id.* at 335. The trial court dismissed the second action based on res judicata, but the appellate court reversed because the employee's limited right to seek indemnity under Corporations Code section 317 did not involve the same primary right as a cause of action for equitable or contractual indemnity. *Id.* at 338, 343–44. In so ruling, though, the appellate court reaffirmed the established rule that the cause of action for purposes of the doctrine of res judicata "is based on the harm suffered, as opposed to the particular legal theory asserted by the litigant," and so "[e]ven where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." *Id.* at 340–41 (quoting omitted).

Similarly, in *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975), a plaintiff who had been injured in an automobile accident lost an action against the driver and owner of the vehicle for damages under a statutory provision. The plaintiff later filed an action based on a negligence theory, but the court found the suit barred by res judicata because "[t]he 'primary right' alleged to have been violated in the instant case is plaintiff's right to be free from injury to her person." *Id.*

Here, Carnacchi's state and federal actions both allege violations of Carnacchi's right to not be charged usurious interest rates. Carnacchi's state and federal claims involve the same cause of action.

---

[5] As discussed above, Carnacchi also argued in his state lawsuit that the interest rate limitations applied because North Dakota law failed to "fix" interest rates for 12 U.S.C. § 85 purposes. *See* ECF No. 12-2 at 10. In his federal lawsuit, Carnacchi makes only the argument – also raised in state court as a request for leave to amend his state affirmative defenses and counterclaims – that the statutes do not apply to U.S. Bank because it is not lawfully located in North Dakota. *See* ECF No. 1 at 3, ¶ 11.

**2. Final Judgment on the Merits**

Because Carnacchi's state usury and RICO claims arise under the same cause of action as his federal RICO claim, res judicata will apply if the state court judgment was a final verdict on the merits. As previously discussed, the state court sustained general demurrers as to Carnacchi's state usury and RICO claims and explicitly denied Carnacchi leave to amend. *See* ECF No. 12-6 at 22-23. The parties disagree about the preclusive effect of a general demurrer. Carnacchi claims that the state court's "ruling on demurrer is no bar to a new action averring new and different facts and evidence; 'If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend. . . .'" ECF No. 21 at 6 (quoting *Keidatz v. Albany*, 39 Cal. 2d 826, 828 (1952)). U.S. Bank counters by citing the Restatement for the proposition that a prior judgment that was the result of a demurrer triggers claim preclusion. ECF No. 26 at 5. U.S. Bank also relies on *Crowley v. Modern Faucet Mfg. Co.*, which states that "[a] judgment entered after a general demurrer has been sustained 'is a judgment on the merits to the extent that the facts alleged do not constitute a cause of action, and will accordingly, be a bar to a subsequent action *alleging the same facts*." 44 Cal. 2d 321, 323 (1955) (emphasis added).

A general demurrer generally is not a bar to a subsequent action alleging additional facts. *See Crowley*, 44 Cal. 2d at 323-24 (the allegation of "new or additional facts" that "cure the defects in the original pleading" will not bar a "subsequent action, whether or not plaintiff had an opportunity to amend his complaint") (quoting *Keidatz*, 39 Cal. 2d at 828)). But this case is different procedurally. Carnacchi raised his arguments (factual and legal) about how the North Dakota constitution bars the North Dakota legislature's special legislation retroactively exempting U.S. Bank from the two-year minimum age requirement, and U.S. Bank responded that Carnacchi raised the affirmative defense/claim too late and the challenge failed on the merits. *See infra* chart on pages 3 through 5 (summarizing arguments and rulings). Thereafter, the state court held that the request was late, would prejudice U.S. Bank, and "appear[ed] to have no merit." *See id.* (echoing U.S. Bank's three arguments against Carnacchi's claim/defense: no standing, estoppel, and claim fails on the merits) The court denied Carnacchi's motion to amend his counterclaims, sustained U.S.

Bank's general demurrer, granted U.S. Bank's motion for a judgment, entered judgment against Carnacchi for $16,722.09, accrued interest of $4,391.23, and costs of the lawsuit, and ordered Carnacchi to pay U.S. Bank's attorney's fees of $ $27,879.75.  *See id*.  And again, the court considered Carnacchi's argument about how the special legislation was unconstitutional under the North Dakota constitution, and it explicitly denied him leave to amend, holding that there was no further basis to amend the cross-complaint.  *See* Fineman Decl. Ex. K, ECF No. 12-6, and Courtroom Minutes, *supra* pages 5 and 6.

Under these circumstances, the only conclusion is that the state's ruling barred Carnacchi from alleging a RICO claim based on the allegations that the retroactive exemption of U.S. Bank from the two-year minimum age requirement violated the North Dakota constitution.  Carnacchi's remedy was to appeal the state court decision, not file a federal lawsuit alleging the same theory in support of his federal claim.[6]  Claim preclusion bars the federal lawsuit.

### V.  CONCLUSION

The court **GRANTS** U.S. Banks's motion to dismiss and dismisses the existing claims with prejudice.

Carnacchi filed a letter brief suggesting that some of his arguments might allow a claim challenging the interest assessed to the judgment against him.  *See* 6/13/12 letter, ECF No. 37.  Under the circumstances, Carnacchi has 28 days to file an amended complaint.

This disposes of ECF No. 10.

**IT IS SO ORDERED.**

Dated: July 5, 2012

_____
LAUREL BEELER
United States Magistrate Judge

---

[6] U.S. Bank also argue conclusorily that Carnacchi lacks standing.  That may or may not be true, but U.S. Bank provided little analysis of its standing argument.  The court ordinarily would have reached the standing argument first but as it cannot, it rules on the easier ground of res judicata.